UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LENA TAYLOR, TORY LOWE, and
JUSTICE WISCONSIN, INC.,

      Plaintiffs,

                              Case No. 20-cv-545-pp

      v.

THE MILWAUKEE ELECTION COMMISSION,
NEIL ALBRECT, THERESA R. GABRIEL,
STEPHANIE D. FINDLY, CARMEN C. CABRERA,
JESS RIPP, THE WISCONSIN ELECTION COMMISSION,
MARGE BOSTELMANN, JULIE M. GLANCEY,
ANN S. JACOBS, DEAN KNUDSON,
ROBERT F. SPINDELL, JR., and MARK THOMSEN,

      Defendants.

---

**ORDER DENYING THE PLAINTIFFS' EMERGENCY MOTION FOR
PRELIMINARY INJUNCTION (DKT. NO. 11)**

---

Plaintiff Lena Taylor currently is a Wisconsin state senator representing

the 4th District, which includes the 53206 zip code, a predominantly African

American neighborhood. Dkt. No. 1 at 3. Plaintiff Taylor is African American

and lives in Milwaukee; she is running for mayor in Wisconsin's April 7, 2020

primary. Id. Plaintiff Tory Lowe is running for alderman in the City of

Milwaukee's 6th aldermanic district, which also includes the 53206 zip code.

Id. Plaintiff Lowe also is African American and a citizen of Milwaukee. Id.

Plaintiff Justice Wisconsin Inc. "is a non-for-profit organized under the laws of

the State of Wisconsin with a primary office in Milwaukee and whose primary

purpose is to better the lives of residents in the inner city and elsewhere and it

has a significant interest as a civil rights organization in a free and unrestricted election;" it was founded by plaintiff Lowe. Id. at 4.

One and a half business days before the scheduled start of the April 7, 2020 election, the plaintiffs filed in the district court for the Eastern District of Wisconsin a "Verified Complaint for Declaratory Relief and Injunctive Relief." Dkt. No. 1. The complaint sues the Milwaukee Election Commission and its five members (in their official capacities) and the Wisconsin Election Commission and its six members (in their official capacities). Id. at 1. The complaint alleges that the defendants violated the plaintiffs' civil rights under 42 U.S.C. §1983 (particularly, that the defendants violated their rights under the First, Fourteenth, Fifteenth, Sixteenth and Twenty-Sixth Amendments to the Constitution) and violated 28 U.S.C. §§2201 and 2202. Id. at 18-21. It also alleges that the defendants abridged the plaintiffs' voting rights in violation of 52 U.S.C. §10301. Id. at 22. The suit seeks injunctive relief in the form of a temporary restraining order and a preliminary injunction under Fed. R. Civ. P. 65. Id. at 25-26. Among the forms of injunctive relieve the plaintiffs seek is a court order that the election scheduled to take place on April 7, 2020—again, one and a half business days after they filed their motion—be postponed until September 2020, due to the impact of the COVID-19 crisis.

## I.    Procedural History

The plaintiffs attached documents to the complaint: a memo from someone at the Wisconsin Legislative Reference Bureau, answering plaintiff Taylor's questions about early voting (dkt. no. 1-1); a September 12, 2019

article from the Brookings Institution called "Setting the record straight on Black voter turnout" (dkt. no. 1-2); a March 27, 2020 article from Wisconsin Public Radio's web site titled "COVID-19 Deaths Concentrated in Milwaukee's African American Community" (dkt. no. 1-3); minutes of a March 18, 2020 meeting of the Wisconsin Elections Commission (dkt. no. 1-4); a March 12, 2020 memo from Meagan Wolfe, the administrator of the Wisconsin Elections Commission, regarding election procedures and the COVID-19 public health emergency (dkt. no. 1-5); a March 13, 2020 memo from Wolfe, regarding "COVID-19 Frequently Asked Questions (FAQ's) and Guidance on Procedural Changes for Care Facility Absentee Voting and Polling Place Relocation" (dkt. no. 1-6); a March 22, 2020 article from the WTMJ-4 web site titled "Milwaukee early voting sites closed over COVID-19 exposure concerns" (dkt. no. 1-7); a March 22, 2020 article from the Fox6Now.com web site titled "Milwaukee's 3 early voting sites shut down 'due to increased COVID-19 exposure risk'" (Dkt. No. 1-8); a printout from https://censusreporter.org/profiles showing a profile for zip code 53206 (dkt. no. 1-9); a document that appears to be a printout from the Milwaukee Public Library's web site, showing that fifteen public libraries are temporarily closed (this document is not dated) (dkt. no. 1-10); a March 25, 2020 article from JSonline titled "Absentee voters in Milwaukee, Dane counties can say they're 'indefinitely confined' and skip photo ID, clerks say" (dkt. no. 1-11); a white paper by Marc V. Levine of the University of Wisconsin-Milwaukee, posted on the UWM Digital Commons, titled "Milwaukee 53206: The Anatomy of Concentrated Disadvantage in an Inner City

Neighborhood, 2000-2017" (dkt. no. 1-12); a December 6, 2018 article from the Appleton Post-Crescent titled "Census data: Minnesota beats Wisconsin on high-speed internet access, too" (dkt. no. 1-13); and the executive summary of the Levine white paper, published by the University of Wisconsin-Milwaukee's Center for Economic Development (dkt. no. 1-14).

In an order docketed around 2:00 p.m. on Sunday, April 5, 2020, the court denied without prejudice the plaintiffs' motion for a preliminary injunction, because they had not presented proof that they had given notice to the adverse parties as required by Fed. R. Civ. P. 65(a)(1). Dkt. No. 4. Since then, counsel has made an appearance for the Milwaukee Election Commission and its individual members (dkt. no. 5), the plaintiffs have filed a declaration and supporting documents confirming that they provided notice to the adverse parties (dkt. no. 6) and the plaintiffs have renewed their motion for a preliminary injunction (twice, in fact, due to the court's failure to see it the first time because it wasn't designated a "renewed" motion) (dkt. nos. 7, 11). The Wisconsin Legislature has filed a motion to intervene (dkt. no. 16) and a proposed motion to dismiss which also serves as its opposition to the motion for preliminary injunctive relief (dkt. no. 20). The Wisconsin Election Commission and its individual members oppose the plaintiffs' motion for injunctive relief (dkt. no. 18), as do the Milwaukee Election Commission and its individual members (dkt. no. 19).

The court gave the plaintiffs a deadline of 2:30 p.m. on April 6, 2020 to file a reply in support of their motion. Dkt. No. 15. In lieu of a brief or

supporting documents, the plaintiffs' counsel filed a letter that states the
following:

> Dear Judge Pepper:
>
> You had requested input from the parties as to the desirability
> of oral argument and other matters. As I understand it, Governor
> Evers has issued an order that may result in delaying the allegedly
> deficient election. Plaintiffs do not believe that oral argument will
> help to clarify the issues raised in the parties' submissions at this
> point. Plaintiff proposes to rely on their written submissions,
> including all exhibits as filed today. However, given the substantial
> filings raising multiple issues, I would suggest that we enter a
> scheduling order on the underlying complaint as well as any issues
> that remain. We do expect a judicial challenge to the executive order
> and so we ask that jurisdiction be maintained until there is a truly
> final order or decision.

Dkt. No. 22.

Between noon on April 6, 2020, when the court issued its deadline for
the plaintiffs to file a reply, and the 2:30 deadline the court had set for them to
do so, Wisconsin Governor Tony Evers issued Executive Order #74, suspending
in-person voting until June 9, 2020. https://evers.wi.gov/Documents/
COVID19/EO074-SuspendingInPersonVotingAndSpecialSession2.pdf. The
Wisconsin Legislature also had challenged that order in the Wisconsin
Supreme Court. Wisconsin Legislature v. Tony Evers, 2020AP000608 (Wis.),
available at https://wscca.wicourts.gov/.

The court held a telephone hearing at 3:30 p.m. on April 6, 2020.
Counsel for the plaintiffs, the WEC and its individual members and the MEC
and its individual members participated, as did counsel for proposed intervenor
the Wisconsin Legislature. In addition, a person who identified himself as

Attorney Walter Hackett stated that he had been retained by two voters but had not yet filed an appearance.

During the hearing, plaintiffs' counsel told the court that the plaintiffs planned to stand on their pleadings to date; they did not intend to file additional briefs or documents in support of the motion for preliminary injunction. Counsel told the court that by asking for a "scheduling order on the underlying complaint," counsel had meant to ask that the case proceed as it otherwise would, under the "standard" scheduling order. Counsel also told the court that in asking that "jurisdiction be maintained," the plaintiffs had meant to ask the court not to *sua sponte* dismiss the motion for injunctive relief or the complaint based on Governor Evers's executive order.

The court indicated that as for "scheduling" orders, it already had set a briefing schedule for the plaintiffs' motion for a preliminary injunction. The defendants and the proposed intervening defendant had filed briefs, and the plaintiffs had indicated that they did not plan to file a reply. As for the complaint, the court stated that there was no need for it to issue a "scheduling order"—Fed. R. Civ. P. 4 described the service of process requirement, after which Rule 12 governed the time for the defendants to answer or otherwise respond. Finally, the court stated that Civil Local Rule 7(b) for the Eastern District of Wisconsin (https://www.wied.uscourts.gov/sites/wied/files/documents/Local%20Rules%202010-0201-%20Amended%202019-0903.3.pdf) governed the briefing schedule for the Wisconsin Legislature's motion to

intervene (dkt. no. 16) and its proposed motion to dismiss[1] (dkt. no. 20); under that rule, the plaintiffs have twenty-one days to respond and the Legislature and defendants have fourteen days to reply.

As to the plaintiffs' concerns that the court might react to Executive Order #74 by *sua sponte* denying the motion for preliminary injunctive relief or dismissing the complaint, the court indicated that it was not in the habit of taking dispositive action *sua sponte*. Finally, the court asked the parties for their views on whether Executive Order #74 mooted the plaintiffs' motion, if it remained in effect. All parties agreed that the order would moot the plaintiffs' motion if not invalidated.

In the late afternoon on April 6, 2020, the Wisconsin Supreme Court enjoined the provisions of Executive Order #74. Wisconsin Legislature v. Evers, Appeal No. 2020AP000608 (Wis.), available at https://wscca.wicourts.gov.

## II.    Other Federal Cases Seeking Postponement of the Election

The plaintiffs' suit is the fifth to be filed in Wisconsin federal courts in just over two weeks. On March 18, 2020 (just under three weeks before the scheduled April 7, 2020 election), the Democratic National Committee and the Democratic Party of Wisconsin sued the individual members of the Wisconsin Elections Commission (and the Republican National Committee and the Republican Party of Wisconsin intervened). Democratic National Committee, *et al.* v. Bostelmann, *et al.*, Case No. 20-cv-249-wmc (W.D. Wis.). They

---

[1] Counsel for the Legislature clarified for the court that the proposed motion to dismiss also was intended to serve as an opposition brief to the plaintiffs' motion for preliminary injunctive relief.

simultaneously filed a motion for a temporary restraining order and a preliminary injunction (with a supporting brief and evidence), asking the court to extend the deadline for electronic and mail-in voter registration to April 3, enjoin the requirement that new voters provide proof of residence, enjoin the requirement that absentee voters include a copy of voter identification with their ballot and enjoining the defendant from rejecting ballots that are postmarked on or before election day. Id. at Dkt. No. 2.

On March 24, 2020 (two weeks prior to the scheduled April 7, 2020 election), the City of Green Bay and its City Clerk sued the Wisconsin Elections Commission and its members, the Secretary-Designee of the Wisconsin Department of Health Services and the Governor of Wisconsin in the Eastern District of Wisconsin, asking the court to enjoin the defendants from requiring the city to allow in-person voter registration and absentee voting, to order the Wisconsin Election Commission to allow the city to mail ballots to all registered voters, to cancel the April 7, 2020 election, to extend the deadline for electronic or mail registration to May 1, 2020 and to set a June 2, 2020 deadline for counting all returned ballots. City of Green Bay v. Bostelmann, et al., Case No. 20-cv-479. Judge William C. Griesbach held a hearing two days later (March 26, 2020) and requested simultaneous briefs due at 3:00 p.m. March 27. Id. at Dkt. No. 40. Later in the day on March 27, 2020, Judge Griesbach dismissed the case for lack of jurisdiction, finding that the plaintiffs did not have standing to bring the suit in federal court. Id. at Dkt. No. 53.

On March 26, 2020 (just under two weeks before the scheduled election), four women ranging in age from sixty-four to eighty-three, all of whom were self-quarantining due to health issues that they alleged put them at higher risk for several illness if they contracted the COVID-19 virus, along with the Wisconsin Alliance for Retired Americans and the League of Women Voters of Wisconsin, filed suit in the Western District of Wisconsin. <u>Gear, *et al.* v. Knudson, *et al.*</u>, Case No. 20-cv-278-wmc. They sued the individual members of the Wisconsin Election Commission and its administrator. <u>Id.</u> Two days later, they filed a motion for a temporary restraining order and preliminary injunction, a supporting brief and declarations and evidence. <u>Id.</u> at Dkt. Nos. 8-17. These plaintiffs asked the court to enjoin the defendants from rejecting or refusing to process or count absentee mail-in ballots that lacked a witness signature. <u>Id.</u> at Dkt. No. 2, page 23.

Also on March 26, 2020, a registered voter who had been diagnosed with COVID-19; the Souls to the Polls alliance of pastors; Voces de la Frontera; Black Leaders Organizing for Communities; the American Federation of Teachers, Local 212, AFL-CIO; SEIU Wisconsin State Council (a conglomerate of unions representing workers in home healthcare services, hospitals and long-term care facilities, stadiums and the catered food industry); and the League of Women Voters of Wisconsin filed suit in the Western District. <u>Reverend Greg Lewis, *et al.* v. Knudson, *et al.*</u>, Case No. 20-cv-284-wmc. They sued the six individual members of the Wisconsin Elections Commission and its administrator. <u>Id.</u> at Dkt. No. 1, page 1. These plaintiffs asked the court to

enjoin the proof of residence requirement and the photo ID requirement and the witness requirement for absentee ballots. <u>Id.</u> at page 66. They also asked the court to order the Wisconsin Election Commission to provide enough ballots and envelopes so that every registered voter who timely requested an absentee ballot by mail would get one in advance of the rescheduled election. <u>Id.</u> They asked the court to enjoin the defendants from rejecting ballots postmarked on or before election day that arrive at the clerk's office by June 2, 2020. <u>Id.</u> They asked for an injunction preventing the defendants from enforcing the requirement that municipalities allow in-person voter or absentee registration. <u>Id.</u> at pages 66-67. They asked the court to postpone the April 7, 2020 election and reschedule it after the public health crisis has subsided, and to extend the deadline for electronic or mail voter registration to May 1, 2020. <u>Id.</u> at page 67. And they asked the court to order a June 2, 2020 deadline for clerks to count all returned mailed absentee ballots. <u>Id.</u>

On March 28, 2020, Judge William C. Conley consolidated the three Western District cases, and after extensive briefing (including the filing of *amicus* briefs), he conducted a hearing on April 1, 2020. <u>See</u>, *e.g.*, <u>Lewis, *et al.*</u> <u>v. Knudson, *et al.*</u>, Case No. 20-cv-284 at Dkt. Nos. 26, 87. On Thursday, April 2, 2020—the day before the plaintiffs filed the instant complaint—Judge Conley issued an extensive, detailed order granting in part and denying in part the relief the various plaintiffs had requested. <u>Id.</u> at Dkt. No. 113; <u>Democratic Nat'l</u> <u>Committee v. Bostelmann</u>, Nos. 20-cv-249; 20-cv-278; 20-cv-284, 2020 WL 1638374 (W.D. Wis. April 2, 2020). Judge Conley denied the plaintiffs' request

to order the April 7, 2020 election postponed. Id. at *15. At the conclusion of

his analysis of that request, Judge Conley stated:

> Without doubt, the April 7 election day will create unprecedented
> burdens not just for aspiring voters, but also for poll workers, clerks,
> and indeed the state. As much as the court would prefer that the
> Wisconsin Legislature and Governor consider the public health
> ahead of any political considerations, that does not appear to be in
> the cards. Nor is it appropriate for a federal district court to act as
> the state's chief health official by taking that step for them.

Id.[2]

Judge Conley granted the request for an extension of the deadline for

receipt of absentee ballots, extending that deadline to 4:00 p.m. on April 13,

2020. Id. at *17. He also granted the request to extend the deadline for receipt

of absentee ballot requests to April 3, 2020 at 5:00 p.m. Id. at *18. He granted

the plaintiffs' request to require the defendants to accept an unwitnessed

ballot, ordering that the defendants must accept an unwitnessed absentee

ballot if it contains a written affirmation or other statement by an absentee

voter that due to the COVID-10 pandemic, he or she was unable to safely

obtain a witness certification despite his or her reasonable efforts to do so,

provided that the ballot is otherwise valid. Id. at *20. Judge Conley denied the

---

[2] The same day the plaintiffs filed this suit, Governor Evers called a special
legislative session for 4:00 p.m. Saturday, April 4, 2020 to consider extending
the election date and converting the election to a mail-in election.
https://www.jsonline.com/story/news/politics/elections/2020/04/03/tony-
evers-calls-lawmakers-into-session-stop-person-voting/2940156001/. Some
lawmakers met on April 4—according to the Milwaukee Journal Sentinel, the
assembly met for seventeen seconds, the senate less—and both houses
recessed until Monday, April 6, 2020.
https://www.jsonline.com/story/news/2020/04/04/wisconsin-legislature-
adjourns-special-session-monday-voting-track-tuesday-election/2948444001/.

plaintiffs' request to enjoin the photo ID requirement. Id. at 21. He also denied the plaintiffs' request to extend the deadline for mail-in registration and to grant relief from proof of residency, for the simple reason that as hard as he had tried to expedite the case, he had conducted the hearing April 1 and issued his decision April 2—by that time, there was only a day left until the plaintiffs' requested extension deadline. Id.

The Wisconsin Legislature (whom Judge Conley had not allowed to intervene in the consolidated suits) and the Republican National Committee and Republican Party of Wisconsin asked the Seventh Circuit Court of Appeals to stay Judge Conley's ruling. Democratic Nat'l Committee, et al. v. Bostelmann, et al., Appeal Nos. 20-1538, 20-1539 20-1545 and 20-1546 (7th Cir.). On the evening of Friday, April 3, 2020, the Seventh Circuit denied the motions for stay as to Judge Conley's order extending the deadline for receipt of absentee ballots to 4:00 p.m. on April 13, 2020 and extending the deadline for requesting absentee ballots to 5:00 p.m. on April 3, 2020. Id. at Dkt. No. 30, page 3. The court granted the motion to stay the part of Judge Conley's order providing an alternative to witness statements for those unable to obtain them. Id. The court also found that the Wisconsin Legislature had standing, and that Judge Conley erred in refusing to allow it to intervene. Id. at page 4. No party asked the court to stay Judge Conley's ruling denying the request that he delay the April 7, 2020 election.

On Saturday, April 4, 2020, the Republican National Committee, the Republican Party of Wisconsin and the Wisconsin Legislature filed an

emergency application for a stay with United States Supreme Court Justice
Brett M. Kavanaugh. <u>Republican Nat'l Committee, *et al.* v. Democratic Nat'l
Committee, *et al.*</u>, Case No. 19A1016 (April 4, 2020) (available at
https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/
html/public/19a1016.html). The plaintiffs in the cases before Judge Conley
have filed their responses to the application for a stay. <u>Id.</u> The Supreme Court
has granted the stay. <u>Republican Nat'l Committee v. Democratic Nat'l
Committee</u>, No. 19A1016, Order No. 23 (April 6, 2020), available at
https://www.supremecourt.gov/opinions/slipopinion/19.

### III.    Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 11)

As the court noted in its April 5, 2020 order, the plaintiffs' motion
consists of two paragraphs:

> Plaintiffs Lena Taylor, Tory Lowe and Justice Wisconsin by their
> attorneys, Paul A. Strouse of Strouse Law Offices and Thomas
> Napierala of Napierala Law Offices bring this emergency motion for
> a temporary restraining order and preliminary injunction on behalf
> of Lena Taylor, Tory Lowe and Justice Wisconsin Inc., against the
> above named defendant Commissions and their officials in their
> official capacities only, to address voter disenfranchisement,
> particularly of African American voters in the 53206 area code
> respectfully move this Court for a preliminary injunction as set out
> below and for the reasons set out in the accompanying Complaint.
> Fed. R. Civ. P. 65(a). Because there are only legal questions at issue,
> Plaintiffs respectfully request that this Court <u>not</u> consolidate the
> preliminary injunction hearing with a later trial on the merits and
> rule in accordance with Fed. R. Civ. P. 65(a)(2).
>
> WHEREFORE, Plaintiffs respectfully request the Court grant their
> Motion and issue a preliminary injunction pending a decision on the
> merits of Plaintiffs' claims in this matter.

Dkt. No. 11 at 2. The plaintiffs did not file a legal brief in support of this
motion. Instead, they asserted at today's hearing, and again in this version of

the motion, that they are relying on the allegations in the complaint and the attachments to the complaint to support the motion.

A.   Standing

Both defendants assert that the plaintiffs do not have standing to seek their requested relief. As Judge Griesbach noted in <u>City of Green Bay</u>,

> "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). The "case or controversy" requirement contained in Article III ensures that the federal judicial power is confined to a role consistent with a system of separated powers and limited to cases "which are traditionally thought to be capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S. 83, 97 (1968). A plaintiff seeking to invoke a federal court's jurisdiction must demonstrate that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citation and internal quotation marks omitted). To establish injury in fact, a plaintiff must show that he suffered "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999).

<u>City of Green Bay v. Bostelmann</u>, No. 20-C-479, 2020 WL 1492975, at *2 (E.D. Wis. Mar. 27, 2020).

The complaint in the instant case alleges that the plaintiffs "have a 'legally protectable interest in this litigation.'" Dkt. No. 1 at ¶28, quoting <u>Lopez-Aguilar v. Marion Cty. Sheriff's Dep't</u>, 924 F.3d 375, 391 (7th Cir. 2019). The "legally protectable interest" standard, however, is the standard for intervention as of right, not standing. While the plaintiffs are correct that in the context of *intervention*, the Seventh Circuit has interpreted "statements of the Supreme

Court as encouraging liberality in the definition of an interest," id. (quoting Meridian Homes Corp. v. Nicholas W. Prassas & Co., 683 F.2d 201, 204 (7th Cir. 1982), it has encouraged that liberality in the context of determining whether a party has a sufficient interest to allow it to intervene in on-going litigation, not in determining whether a party has standing to bring suit.

The plaintiffs assert that plaintiff Taylor "is a candidate for Mayor and represents voters in the 6th district/53206." Id. They assert that plaintiff Lowe "is a candidate for Milwaukee's 6th Aldermanic District. Which encompasses 6th District/53206." Id. They assert that "Justice Wisconsin is a not for profit civil rights organization which devotes itself to the greater civic good of inner-city life in 6th District/53206 and elsewhere." Id. Finally, they assert that Carolyn Carroll—who is not named as a plaintiff in the suit—"is a voter who is denied equal access to the vote by way of comparison to white or other voters within the City of Milwaukee." Id.

It is not clear whether Taylor is asserting that she has standing because she *represents* people who are being denied their right to vote by the defendants' practices. If so, she has provided the court with no authority supporting a claim that an individual legislator has standing to sue for alleged violations of the constitutional rights of her constituents. Nor is it clear whether Taylor and Lowe are asserting that they have standing because they are *candidates* who may suffer if some of the voters on whom they rely are denied their right to vote by the defendants' practices. Again, if this is their argument, they have presented the court with no authority supporting this

proposition. The court does not mean to imply that there *is* no authority for these positions. But if there is, the plaintiffs have not identified it, and this court does not have the obligation or the time at this point to find it.

Perhaps Taylor and Lowe mean to assert that they have standing because they are *voters* who are being denied their right to vote by the defendants' practices. If they had provided the court with evidence that they, themselves, had been or would be prevented from voting by the defendant's practices, it is likely that they would be able to assert standing. But that is not what they allege. They allege that *others*—such as Carolyn Carroll, whom they did not name as a plaintiff but whom they assert lives in the 53206 zip code and "is affected by the actions" of the defendants—are being prevented from voting because they were not able to vote early.[3]

As for Justice Wisconsin Inc., the Wisconsin Election Commission does not assert that it does not have standing. Dkt. No. 18. The Milwaukee Election Commission argues that Justice Wisconsin does not have standing because it is an organization asserting a general public interest, rather than specific harm or injury to itself. Dkt. No. 19 at 4. Citing <u>United States Parole Comm'n v.</u>

_____

[3] The complaint contains what appears to be a screen shot of a post from Ms. Carroll on an unidentified social media platform, stating that she lives in a senior living facility with people who usually go to vote as a group. Dkt. No. 1 at ¶15. The post says that Ms. Carroll does not know "how we're going to do this because some of them don't even have internet or cell phone so I don't know how they going to do this." <u>Id.</u> It says that "it might be like at least two or three people from my building going out to vote with me." <u>Id.</u> Ms. Carroll does not appear to assert in the post that *she* can't vote; she appears to express concern that others in her building will be deterred from voting. Likely she is correct.

<u>Geraghty</u>, 445 U.S. 388 (1980), the MEC argues that Justice Wisconsin has not provided the court with enough information to determine whether its members would have standing in their own rights or whether its interests are germane to the organization's purpose—it has not indicated whether it *has* members, whether those members live in the 53206 zip code, how they would be impacted by the election procedures of which the plaintiffs complain. <u>Id.</u>

While the court cannot definitively say that none of the plaintiffs have standing to bring this suit, the defendants have raised valid concerns, and the plaintiffs—each of whom appears to have different bases upon which to assert standing—have provided little to support their claims in that regard.

B.    <u>Motion for Injunctive Relief</u>

Judge Conley stated the standard for determining whether to grant injunctive relief.

> The standard for determining whether a preliminary injunction or a temporary restraining order is appropriate is the same. *See Planned Parenthood of Wis. v. Van Hollen*, 963 F. Supp. 858, 865 (W.D. Wis. 2013) (citing *Winnig v. Sellen*, 731 F. Supp. 2d 855, 857 (W.D. Wis. 2011)). Specifically, a plaintiff must first show "(1) that he will suffer irreparable harm absent preliminary injunctive relief during the pendency of his action; (2) inadequate remedies at law exist; and (3) he has a reasonable likelihood of success on the merits." *Whitaker By Whitaker v. Kenosha Unified Sch. Distr. No. 1 Bd. Of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017) (citing *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)). Then, if this initial showing is successfully made, "the court must engage in a balancing analysis, to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Id.* (citing *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1057 (7th Cir. 2016)).

<u>Democratic Nat'l Committee v. Bostelmann</u>, 2020 WL 1638374, at *10.

While the plaintiffs' motion for a preliminary injunction does not specify the injunctive relief the plaintiffs request, the complaint seeks four forms of relief. It asks the court to postpone the April 7, 2020 in-person election until September 8, 2020. Dkt. No. 1 at 25. It asks the court "to permit early voting to continue" (although the complaint alleges that early voting was suspended on March 22, 2020—twelve days before the plaintiffs filed the complaint). Id. at 26. It asks the court to extend the deadline for registering to vote electronically or by mail to September 8, 2020. Id. at 26. And it asks the court to "cancel" in-person registration and in-person voting—in other words, to order that people who show up in person to register or vote not be allowed to do so. Id.

Judge Conley concluded that the threatened loss of constitutional rights constituted irreparable harm. Democratic Nat'l Committee v. Bostelmann, 2020 WL 1638374, at *11. This court agrees. He looked at each of the plaintiffs' requests to determine whether the plaintiffs had a reasonable likelihood of success on the merits as to that request, then conducted the balancing of harms.

Judge Conley found that while the plaintiffs might have some likelihood of success on the merits of their claim seeking postponement of the April 7, 2020 election, id. at *13, "concerns as to the propriety of a federal court taking the extraordinary step of delaying a state-wide election at the last minute, and the federalism problems that are necessarily implicated, . . . weigh[ed] heavily in favor of denying" the plaintiffs' request that he enjoin the election from taking place on April 7, id. at *15. The plaintiffs in that case did not appeal this

determination. This is the same relief the plaintiffs in this case request in their first form of relief.

Judge Conley granted the plaintiffs' request to extend the deadline by which absentee ballots could be received (a request the Wisconsin Election Commission did not oppose), finding that the plaintiffs had demonstrated a likelihood of success on the merits and that the balance of harms favored granting the relief. Id. at *17. He also extended the deadline by which voters could request absentee ballots by a day. Id. at *18. And he granted the plaintiffs' request to enjoin the requirement that an absentee ballot be signed by a witness, to the extent that he ordered the defendants to accept an unwitnessed ballot "that contains a written affirmation or other statement by an absentee voter that due to the COVID-19 pandemic, he or she was unable to safely obtain a witness certification despite his or her reasonable efforts to do so, provided that the ballot is otherwise valid," and leaving it up to the "individual discretion of clerks as to whether to accept a voter's excuse for not completing the witness certification requirement based on the written affirmation by the individual voter." Id. at *20.

The second, third and fourth forms of relief the plaintiffs have asked of this court are dependent on the court's granting their first request—the request to postpone the election. They also are more extensive in time and nature than the requests Judge Conley granted in the cases before him. The Supreme Court's decision on the appeal of Judge Conley's rulings supports the conclusion that this court cannot grant the relief the plaintiffs request.

The Supreme Court's *per curiam* decision considered the question of "whether absentee ballots now must be mailed and postmarked by election day, Tuesday, April 7, as state law would necessarily require, or instead may be mailed and postmarked after election day, so long as they are received by Monday, April 13." <u>Republican Nat'l Committee v. Democratic Nat'l Committee</u>, 589 U.S. ___, Case No. 19A1016, at *1 (April 6, 2020). In holding that the district court erred in ordering that absentee ballots mailed and postmarked after April 7, 2020 could be counted if received by April 13, 2020, the Supreme Court stated that

> [b]y changing the election rules so close to the election date and by affording relief that the plaintiffs themselves did not ask for in their preliminary injunction motions, the District Court contravened this Court's precedents and erred by ordering such relief. This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election. See *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (*per curiam*); *Frank v. Walker*, 574 U.S. 929 (2014); *Veasy v. Perry*, 574 U.S. ___ (2014).

<u>Id.</u> at *2.

The Court emphasized that its decision "on the narrow question before the Court should not be viewed as expressing an opinion on the broader question of whether to hold the election, or whether other reforms or modifications in election procedures in light of COVID-19 are appropriate. That point cannot be stressed enough." <u>Id.</u> at 4. But this court does not read that language as indicating that a federal district court should make those decisions, and it agrees with Judge Conley that for a federal district court to take the extraordinary step of ordering the delay of a state-wide election raises

federalism concerns that weigh against the court granting the relief the plaintiffs request.[4]

The fact remains that "[a] preliminary injunction is an extraordinary remedy never awarded as of right." <u>Orr v. Shicker</u>, Nos. 19-1380, 19-1387 & 19-1732, 2020 WL 1329659, at *8 (7th Cir. Mar. 23, 2020) (quoting <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008)). A preliminary injunction "is an exercise of a vary far-reaching power, never to be indulged in except in a case clearly demanding it." <u>Id.</u> (quoting <u>Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.</u>, 549 F.3d 1079, 1085 (7th Cir. 2008)). The plaintiffs have not presented sufficient legal analysis or evidence that these particular plaintiffs will be disenfranchised to allow the court to exercise that far-reaching power.

That is not to say that the circumstances that gave rise to the filing of this complaint, and the complaints in the cases before Judges Conley and Griesbach, are not extraordinary. "Extraordinary" seems too mild a word. As the court writes, this election is scheduled to take place during what United Sates Surgeon General Jerome M. Adams has warned will be "the hardest and saddest week of most Americans' lives." https://www.washingtonpost.com/world/2020/04/06/coronvirus-latest-news/. Dr. Anthony Fauci, the senior infectious disease specialist on the White House coronavirus task force, has stated, "Things are going to get bad and we need to be prepared for that. It's

---

[4] The court also acknowledges that the Supreme Court was concerned with a court granting relief a party did not request; here, the parties have requested specific relief and the court has considered only the relief requested.

going to be shocking to some and it certainly is really disturbing to see that . . . just buckle down." https://foreignpolicy.com/2020/04/06/fauci-surgeon-general-adams-prepare-americans-for-hardest-moment/. In the last week—since March 30, 2020—confirmed cases in Wisconsin have jumped from 1,221 on March 30 to 2,440 on April 6; in Milwaukee alone, confirmed cases have skyrocketed from 617 on March 30 to 1,256 on April 6. https://www/dhs/wisconsin.gov/covid-19/index.htm. Officials from the Centers for Disease Control are in Milwaukee to try to learn how the virus is being transmitted; they are studying the rapid spread of the virus on the north side of Milwaukee. https://www.jsonline.com/story/news/health/2020/03/27/cdc-coronavirus-teams-milwaukee-study-secondary-spread/2919654001/. The north side includes the 53206 zip code referenced by the plaintiffs. The Journal Sentinel has reported on April 3, 2020 that of the forty-five people confirmed dead in Milwaukee County as a result of the virus, at least thirty-three were African American. https://www.jsonline.com/story/news/2020/04/03/african-americans-milwaukee-hit-hard-coronavirus/5111950002/. Over the afternoon and evening hours of April 6, 2020, this court's staff received a flood of telephone calls and emails from individuals asking the court to postpone the primary election, then to uphold Executive Order #74.

Despite all this, it appears that tomorrow morning, those who have not yet voted will face a grim choice: go out to the polling places (the ones that are open) and risk being exposed to the virus or spreading it to their friends and neighbors, or forego one of the most sacred rights of citizenship—the right to

have a say in the governance of their communities, their state and their nation. "Extraordinary" is a feeble description of the circumstances that appear to be leading to that choice. But this court must hold, as Judge Conley did, that this federal court does not have the authority "to act as the state's chief health official" by making the decision that needs to be made to put the health and safety of the community first.

## IV. Conclusion

The court **DENIES** the plaintiffs' motion for preliminary injunction. Dkt. No. 11.

Dated in Milwaukee, Wisconsin this 6th day of April, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**